# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| PROFESSOR MASAHIRO IIDA, | Case No. 6:22-cv-00662-ADA |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | **PUBLIC VERSION** |
| INTEL CORPORATION, | |
| Defendant. | |

**INTEL CORPORATION'S OPPOSED MOTION FOR INTRA-DISTRICT TRANSFER TO THE AUSTIN DIVISION OF THE WESTERN DISTRICT OF TEXAS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................................1
II. FACTUAL BACKGROUND ........................................................................................1
    A. Plaintiff's Infringement Allegations ..................................................................1
    B. The Relevant Witnesses and Documents ...........................................................2
    C. Plaintiff Resides in Japan ...................................................................................3
III. LEGAL STANDARD ....................................................................................................3
IV. ARGUMENT ..................................................................................................................4
    A. The Convenience of Witnesses Strongly Favors Transfer ................................4
    B. The Relevant Sources of Proof Strongly Favor Transfer ..................................7
    C. The Practical Considerations Favor Transfer ....................................................8
    D. The Local Interests Favor Transfer ....................................................................8
    E. The Remaining Factors Are Neutral ..................................................................9
    F. The Balance of Factors Strongly Favors Transfer ...........................................11
V. CONCLUSION .............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*10Tales, Inc. v. TikTok Inc.*,
   No. 6:20-cv-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ............................... 5

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) .......................................................................................... 5, 8

*Corrino Holdings LLC v. Expedia, Inc.*,
   No. 6:20-CV-309-ADA, 2022 WL 1094621 (W.D. Tex. Apr. 12, 2022) ............................ 6, 9

*Datascape, Ltd. v. Dell Techs., Inc.*,
   No. 6:19-CV-129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ........................... 7, 11

*Future Link Sys., LLC v. Advanced Micro Devices, Inc.*,
   No. 6:20-CV-1176-ADA, 2021 WL 6015535 (W.D. Tex. Oct. 18, 2021) ............................... 8

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ..................................................................................... 4, 7, 10

*In re Google LLC*,
   No. 2021-171, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .............................................. 6, 7

*In re Google LLC*,
   No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ................................................... 7

*Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*,
   No. 6:19-CV-355-ADA, 2020 WL 6136783 (W.D. Tex. Mar. 30, 2020) ................................ 6

*Healthpoint, Ltd. v. Derma Sci., Inc.*,
   939 F. Supp. 2d 680 (W.D. Tex. 2013) ..................................................................................... 9

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ................................................................................................ 8

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) .......................................................................................... 4, 10

*Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*,
   No. 1:14-CV-464-LY, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014) ................................. 8

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ................................................................................................ 4

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ................................................................................ 4, 5, 9, 11

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ................................................................................................ 4

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) .......................................................................................... 11

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ............................................................................................ 4, 6

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................................................................ 4, 6

*Wet Sounds, Inc. v. Audio Formz, Inc.*,
  No. 17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017), *report
  and recommendation adopted by* 2018 WL 1219248 (W.D. Tex. Jan. 22,
  2018) ..................................................................................................................................... 9

*In re WMS Gaming Inc.*,
  564 F. App'x 579 (Fed. Cir. 2014) ...................................................................................... 10

**FEDERAL STATUTES**

28 U.S.C. § 1404 ........................................................................................................................... 1

28 U.S.C. § 1404(a) ......................................................................................................... 1, 3, 4, 11

**OTHER AUTHORITIES**

U.S. Patent No. 6,812,737 ............................................................................................... 1, 2, 3, 10

I.  **INTRODUCTION**

Defendant Intel Corporation ("Intel") moves pursuant to 28 U.S.C. § 1404(a) for transfer to the Austin Division of the Western District of Texas. While the bulk of Intel's employees are in California and Oregon, this is the unusual case in which several relevant Intel employees reside in the Austin Division of the Western District of Texas; indeed, Plaintiff's complaint identifies over two dozen allegedly relevant witnesses who work from Intel's Austin facilities. Sources of proof relevant to this specific case also are located in Austin, where Intel maintains the data sheets identified in Plaintiff's complaint, and the Austin Division has a significant local interest in adjudicating this case.

The Waco Division, by contrast, has no connection to this dispute. There are no potential witnesses in the Waco Division; none of the relevant evidence is in the Waco Division; the Waco Division has no localized interest in this case; and there are no potential witnesses for whom only the Waco Division could exercise subpoena power. Neither Plaintiff, a resident of Japan, nor Intel has any discernable connection to the Waco Division. Indeed, even for the relevant witnesses who reside outside of Texas, it would be more convenient for them to travel to the Austin Division than the Waco Division of this District.

In sum, all of the § 1404 factors strongly favor transfer or are neutral, while none favors maintaining the case in this Division. This case should be transferred to the Austin Division.

II.  **FACTUAL BACKGROUND**

   A.  **Plaintiff's Infringement Allegations**

Plaintiff alleges that Intel infringes U.S. Patent No. 6,812,737 ("the '737 patent") by selling field programmable gate array ("FPGA") devices that employ so-called adaptive logic modules, or ALMs (the "Accused Products"). ECF No. 1, Complaint ("Compl.") ¶¶ 39, 56. The Accused Products allegedly infringe the '737 patent by containing "look up tables" that can be

configured via an internal configuration control circuit. *Id.* ¶¶ 62–68. The '737 patent, which claims priority to a similar Japanese patent application, expired on June 28, 2022. *Id.* ¶¶ 34, 37.

### B. The Relevant Witnesses and Documents

In support of his venue-related allegations, Plaintiff identifies over two dozen Intel employees "in this District" who allegedly "have worked, and presently work, on the design, sale, and support" of the Accused Products. *Id.* ¶ 27 & n.8. None of the employees Plaintiff identifies, however, is located in the Waco Division; rather, Plaintiff admits that each of the identified Intel employees works from the Austin Division, where Intel maintains several facilities. *See id.* ¶¶ 15–17; *see also* Declaration of Pascal Veysseire ("Veysseire Decl.") ¶ 7.

The majority of Intel's domestic workforce is located in California and Oregon. *See* Veysseire Decl. ¶¶ 8–9. However, in this case, several Intel employees with relevant knowledge work from Intel's facilities in Austin, Texas. These Austin-based Intel employees include individuals in the Customer Experience Group, such as Jarrod Blackburn, who is involved in the creation of customer documentation for the Accused Products, including data sheets like the one cited by Plaintiff in his infringement allegations. *See, e.g.*, Compl. ¶¶ 62–66 & nn. 10–15; ECF No. 1-4; Declaration of Jarrod Blackburn ("Blackburn Decl.") ¶ 5; Declaration of Ilya Ganusov ("Ganusov Decl.") ¶ 9. In addition, Intel employees who work on certain firmware and hardware components of the Accused Products that are responsible for configuring the ALMs—including Biyun Zhou and Archana Sampath—are located in Austin, Texas. *See* Declaration of Biyun Zhou ("Zhou Decl.") ¶¶ 4–5; Ganusov Decl. ¶ 10. These individuals possess knowledge relevant to the components and functionality identified in Plaintiff's infringement allegations.

Additional Intel personnel with relevant knowledge of the specifically accused functionality are located outside the Western District of Texas. These include employees on Intel's "Fabric Architecture" team located in San Jose, California, and Toronto, Canada, as well

as employees in Penang, Malaysia, who are responsible for creating and modifying ALM-related schematics. Ganusov Decl. ¶¶ 2, 4–8.

From San Jose, Toronto, and Penang, it is quicker and less expensive to travel to Austin than it is to travel to Waco, Texas. *See* Declaration of Andrew T. Nguyen ("Nguyen Decl.") ¶¶ 3–8, Exs. 1–6. Intel, moreover, does not have any offices in the Waco Division, and Intel is unaware of any relevant evidence or witnesses with relevant knowledge located in the Waco Division. *See* Veysseire Decl. ¶ 4; Blackburn Decl. ¶ 6; Ganusov Decl. ¶ 11.

### C.   **Plaintiff Resides in Japan**

Plaintiff, the named inventor and owner of the asserted '737 patent, is a Japanese citizen residing in Kumamoto, Japan. Compl. ¶¶ 1–2. Plaintiff is currently a professor at Kumamoto University. *Id.* ¶ 1. Plaintiff allegedly conceived of the invention that is the subject of the '737 patent in 2001, while conducting research on FPGA architecture as a doctoral student in Japan. *See id.* ¶¶ 1, 30. Plaintiff does not have any known connections to the Waco Division, or the Western District of Texas more broadly.

### III.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice," a court may transfer a case to any district or division where the case could have been brought. 28 U.S.C. § 1404(a). In assessing convenience, courts in the Fifth Circuit weigh eight private and public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; . . . (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the

avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (quoting *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004)).

These eight factors "apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1323 (Fed. Cir. 2021) (quoting *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).

## IV.  ARGUMENT

The Court should transfer this case to the Austin Division. There is no dispute that this case could have been brought in the Austin Division. *See* Compl. ¶ 13; ECF No. 30, Answer to Complaint ("Answer") ¶ 13. Therefore, the transfer analysis turns on weighing the private and public interest factors, which in this case strongly favor transfer to Austin.

### A.  The Convenience of Witnesses Strongly Favors Transfer

The convenience of the witnesses is "probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citation omitted). The analysis of this factor "must consider" the convenience of "possible party witnesses" and non-party witnesses. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204. At the same time, witnesses who are located far from both venues "will be inconvenienced by extensive travel regardless of

the forum and thus the '100-mile' rule should not be rigidly applied." *10Tales, Inc. v. TikTok Inc.*, No. 6:20-cv-00810-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021); *see also In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020). The Fifth Circuit, moreover, has recognized that even travel within 100 miles can impose costs on witnesses, and these costs should be factored into the analysis. *Radmax*, 720 F.3d at 289.

This factor strongly favors transfer to the Austin Division. Significantly, Plaintiff has identified over two dozen Intel employees "in this District" whom he contends "have worked, and presently work, on the design, sale, and support of the Accused Products." Compl. ¶ 27 & n.8; *see also* ECF. No. 1-3 (screen captures of LinkedIn profiles). Plaintiff alleges that these employees are relevant, and admits that each of them is located in the Austin Division, where Intel maintains facilities.[1] None is in the Waco Division. *See* Veysseire Decl. ¶¶ 6–7.

Several of the Austin-based employees identified by Plaintiff possess relevant knowledge and are potential witnesses in this case. Intel employee Jarrod Blackburn is in the Customer Experience Group in Austin and is responsible for creating customer documentation for the Accused Products. Blackburn Decl. ¶¶ 4–5. For example, Mr. Blackburn's group is responsible for creating and maintaining data sheets for FPGA devices, including data sheets like the one cited repeatedly throughout Plaintiff's complaint. *See id.* ¶ 5; Compl. ¶¶ 62–66 & nn. 10–15; ECF No. 1-4. Additionally, there are Intel employees in Austin, including Biyun Zhou and Archana Sampath, who work on firmware and hardware components that are responsible for configuring the ALMs in the Accused Products. Zhou Decl. ¶¶ 4–5. It is unquestionably more

---

[1] Despite Plaintiff's contrary allegation, one of the identified employees, Shawn Slockers, is currently working in Colorado. Veysseire Decl. ¶ 7. In addition, several of the identified individuals are no longer employees of Intel: Galen Blake, Brice Donald N., Deam Leong, Tony Reipold, Zhen Song, Neema Vyas, and David Wilson. *Id.* To the best of Intel's knowledge, these individuals are still in or around the Austin area.

convenient for these potential witnesses located in Austin to attend trial in the Austin Division. *See Volkswagen II*, 545 F.3d at 317 ("[I]t is an 'obvious conclusion' that it is more convenient for witnesses to testify at home[.]" (quoting *Volkswagen I*, 371 F.3d at 205)).

The Austin Division also would be more convenient for potential Intel witnesses located outside of Texas. These potential witnesses include employees who work on the "Fabric Architecture" team, such as Ilya Ganusov and Grace Zgheib in San Jose, California, and Jeff Chromczak in Toronto, Canada. Ganusov Decl. ¶¶ 4–6. Additionally, employees in Penang, Malaysia, such as Bee Yee Ng, create and modify ALM-related schematics and drawings. *Id.* ¶ 8. Travel to Austin, as opposed to Waco, is significantly more convenient for these potential out-of-state witnesses. It is both faster and cheaper to travel to Austin from San Jose, Toronto, and Penang than it is to travel to Waco. *See* Nguyen Decl. ¶¶ 3–8, Exs. 1–6; *see also Corrino Holdings LLC v. Expedia, Inc.*, No. 6:20-CV-309-ADA, 2022 WL 1094621, at *4 (W.D. Tex. Apr. 12, 2022) ("[F]or those witnesses traveling from out of state, trial in the Austin Division would likely be easier to get to and cheaper."); *In re Google LLC*, No. 2021-171, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("There is no major airport in the Waco Division of the Western District of Texas . . . ."). Additionally, if trial were held in Austin, Intel's out-of-state witnesses would have the ability to work from Intel's Austin offices while waiting to testify, an option that would not be available if trial were held in Waco. *See Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No. 6:19-CV-355-ADA, 2020 WL 6136783, at *4 (W.D. Tex. Mar. 30, 2020) (finding that the convenience of witnesses weighs in favor of transfer to Austin where the defendant has offices in Austin and out-of-town witnesses "can work in the Austin offices").

Plaintiff—a Japanese citizen residing in Kumamoto, Japan (Compl. ¶ 1)—has no ties to the Waco Division, and Intel is unaware of any non-party witnesses located in the Waco

-6-

Division. Because a number of material potential witnesses reside within the Austin Division and no known witnesses reside in the Waco Division, the convenience of witnesses—the most important factor in the transfer analysis—overwhelmingly favors transfer. *See Genentech*, 566 F.3d at 1343–45; *In re Google LLC*, 2021 WL 4427899, at *4 ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer.").

      B.      **The Relevant Sources of Proof Strongly Favor Transfer**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* Beyond the physical location of documents, "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval," are also relevant. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Intel's relevant technical documents that show details of the ALMs in the Accused Products are created and maintained in the Austin Division and outside of the District. For example, the FPGA data sheets repeatedly cited in Plaintiff's complaint are maintained by members of the Customer Experience Group in Austin. *See* Blackburn Decl. ¶ 5. In addition, Intel employees with access to relevant technical documents, such as Mr. Blackburn, are located in the Austin Division. Intel is unaware of any relevant evidence regarding the Accused Functionality that is located or kept in the Waco Division. Thus, access to sources of proof is relatively easier in the Austin Division than in the Waco Division, which supports transfer. *See Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-129-ADA, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) ("As [defendant] demonstrates, access to sources of proof is *relatively* easier in Austin than it is in Waco. This factor thus supports transfer.").

### C.     The Practical Considerations Favor Transfer

The practical considerations that make trial of a case easy, expeditious, and inexpensive favor transfer to the Austin Division. This factor particularly favors transfer when a case is in its early stages. *Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 WL 12479284, at *2 (W.D. Tex. Aug. 12, 2014); *see also Future Link Sys., LLC v. Advanced Micro Devices, Inc.*, No. 6:20-CV-1176-ADA, 2021 WL 6015535, at *7 (W.D. Tex. Oct. 18, 2021) (finding that a transfer motion filed early in the case meant that it was "unlikely for transfer to result in any major delay"). Moreover, "once a party files a transfer motion, disposition of that motion should take top priority in the case." *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020) (collecting cases).

This case is in its earliest stages. The Complaint was recently filed on June 24, 2022. No scheduling order has been entered in the case, and fact discovery has not yet opened. Further, Plaintiff does not have any other actions pending in the Waco Division and has no connections to the Waco Division. Accordingly, the practical considerations favor transfer.

### D.     The Local Interests Favor Transfer

The Austin Division has more interest in and connection to the outcome of this case than the Waco Division. Intel has no presence in the Waco Division; no events forming the basis for Plaintiff's infringement allegations occurred in the Waco Division; and no relevant witnesses or evidence are located in the Waco Division. On the other hand, as Plaintiff recognizes, Intel has multiple facilities in Austin, and there are a number of Intel employees in Austin with relevant knowledge of the devices and functionality accused of infringement in this case. *See* Compl. ¶¶ 15–17, 27, 27 n.8. These considerations "militate toward a transfer to" the Austin Division. *See Mimedx*, 2014 WL 12479284, at *3; *see also In re Hoffmann-La Roche Inc.*, 587 F.3d 1333,

1338 (Fed. Cir. 2009) ("[B]ecause the [transferee venue] has a meaningful local interest in adjudicating the dispute and no meaningful connection exists with the [transferor venue], this factor also favors transfer.").

Plaintiff's choice to file this suit in the Waco Division does not alter the analysis. A plaintiff's choice of forum should be given minimal deference in the context of intra-district transfers, particularly where, as here, Plaintiff has chosen to file suit in a forum with which he has no relevant connections. *See Radmax*, 720 F.3d at 289 (citation omitted); *see also Wet Sounds, Inc. v. Audio Formz, Inc.*, No. 17-CV-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017) ("[T]he Court will not give deference to a plaintiff's choice of forum when the plaintiff is not a resident of the chosen forum and the underlying facts of the case did not occur in the chosen forum."), *report and recommendation adopted by* 2018 WL 1219248, at *1 (W.D. Tex. Jan. 22, 2018).

### E. The Remaining Factors Are Neutral

*Availability of Compulsory Process.* This court has found that the Austin Division's subpoena power overlaps with that of the Waco Division. *See Corrino Holdings*, 2022 WL 1094621, at *3 (finding that the Waco Division and Austin Division "would have the same subpoena power"). Additionally, Intel is not aware of any third-party witnesses unwilling to attend trial who would be subject to compulsory process in one Division but not the other. "Because there is no evidence that either side requires compulsory process to obtain testimony in either venue, this factor is neutral." *Healthpoint, Ltd. v. Derma Sci., Inc.*, 939 F. Supp. 2d 680, 689 (W.D. Tex. 2013) (citation omitted).

*Court Congestion.* Intel is not aware of administrative difficulties in either the Austin Division or Waco Division, such that efficiency would favor one division over the other. If anything, the increase in case filings in the Waco Division over the last several years may

support transfer to other Divisions within the District to alleviate congestion.[2] Regardless, the Federal Circuit has cautioned that court congestion is "the most speculative" of the transfer factors and cannot outweigh the other factors. *See Genentech*, 566 F.3d at 1347 ("[W]hen . . . several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.").

The circumstances of this case, moreover, mitigate the significance of this factor. Plaintiff accuses a functionality implemented in certain Intel devices that have been sold since at least 2004. Compl. ¶ 40. Yet, Plaintiff waited until June 2022 to bring suit against Intel. Moreover, the asserted '737 patent has already expired, and Plaintiff does not seek an injunction or any other equitable remedies. *See id.* ¶¶ 37, 77, 83, Prayer for Relief. In light of these circumstances, there is no reason that the time to trial should be of significance. *See Juniper Networks*, 14 F.4th at 1322 (holding that, where the facts did not indicate plaintiff's position in the market was being threatened, relative time to resolution was not of "particular significance"); *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) (the "prospective speed with which [a] case might be brought to trial" is not "of particular significance" where the plaintiff "does not practice the patent"). Thus, at a minimum, this factor is neutral.

***Familiarity with Governing Law and Conflict of Laws.*** Both the Austin Division and Waco Division are familiar with relevant patent laws, have similar procedural rules (including Local Rules), and apply the same governing circuit law. Intel, moreover, is unaware of any material issues concerning conflict of laws or the application of foreign law. As a result, those factors are neutral.

---

[2] According to statistics from Lex Machina, as of September 19, 2022, there are 1,124 open cases in the Waco Division for a single judge, while Judges Yeakel and Pitman in the Austin Division collectively have 1,130 open cases (513 cases and 617 cases, respectively).

### F. The Balance of Factors Strongly Favors Transfer

The Austin Division is clearly more convenient. Each of the private and public interest factors either strongly favor transfer (convenience of the witnesses, relevant sources of proof, practical considerations, and local interests) or are neutral (compulsory process, court congestion, familiarity with the governing law, and conflict of laws). "With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is '*clearly* more convenient.'" *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014); *see also Radmax*, 720 F.3d at 290 (requiring intra-district transfer where three factors favored transfer, five were neutral, and none favored maintaining the case in the transferor division); *Datascape*, 2019 WL 4254069, at *1 (granting intra-transfer to the Austin Division where "[m]ost—if not all—of the relevant connections in [the] case are to Austin rather than to Waco").

### V. CONCLUSION

The Austin Division is clearly more convenient. Therefore, Intel respectfully requests that the Court transfer this case to the Austin Division pursuant to 28 U.S.C. § 1404(a).

DATED: September 23, 2022            Respectfully submitted,

By  /s/ J. Stephen Ravel
    J. Stephen Ravel
    Texas State Bar No. 16584975
    Kelly Ransom
    Texas State Bar No. 24109427
    KELLY HART & HALLMAN LLP
    303 Colorado, Suite 2000
    Austin, TX 78701
    Telephone: (512) 495-6429
    Facsimile: (512) 495-6401
    steve.ravel@kellyhart.com
    kelly.ransom@kellyhart.com

Gregory P. Stone *(pro hac vice)*
California State Bar No. 78329
Zachary M. Briers (*pro hac vice*)
California State Bar No. 287984
Vincent Y. Ling (*pro hac vice*)
California State Bar No. 325228
Faye Paul Teller (*pro hac vice*)
California State Bar No. 343506
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
zachary.briers@mto.com
vinny.ling@mto.com
faye.teller@mto.com

J. Kain Day (*pro hac vice*)
California State Bar No. 322372
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001
Telephone: (202) 220-1100
kain.day@mto.com

Andrew T. Nguyen (*pro hac vice*)
California State Bar No. 331847
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
andrew.nguyen@mto.com

***Attorneys for Defendant Intel Corporation***

-13-

## CERTIFICATE OF CONFERENCE

The undersigned certifies counsel have conferred. Plaintiff opposes the relief sought. Accordingly, the Motion is presented to the Court for resolution.

/s/ J. Stephen Ravel
J. Stephen Ravel

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing sealed documents via electronic mail and publicly filed documents via the Court's CM/ECF system on September 23, 2022.

/s/ J. Stephen Ravel
J. Stephen Ravel